UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-cv-25321-COOKE/DAMIAN

TERESITA IVONNE GUTIEREZ,

    Plaintiff,

vs.

KILOLO KIJAKAZI,
Acting Commissioner of Social
Security,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

THIS CAUSE is before the Court on the parties' Cross-Motions for Summary Judgment [ECF Nos. 16, 20]. Plaintiff, Teresita I. Gutierrez ("Plaintiff" or "Ms. Gutierrez"), seeks the reversal and remand of the decision of the Administrative Law Judge ("ALJ") denying her claim for Social Security Disability Insurance ("SSDI") and Supplemental Security Income ("SSI") benefits. This matter was referred to the undersigned by the Honorable Kathleen M. Williams, United States District Judge. [ECF No. 2].

Having reviewed the Cross-Motions [ECF Nos. 16, 20], the Responses thereto [ECF Nos. 21, 22], the administrative record [ECF No. 9], and all relevant authorities, the undersigned **RECOMMENDS** that Plaintiff's Motion for Summary Judgment [ECF No. 16] be **DENIED** and Defendant's Motion for Summary Judgment [ECF No. 20] be **GRANTED** for the reasons that follow:

## I.   BACKGROUND

### A.   Ms. Gutierrez's Claim for Benefits

Ms. Gutierrez alleged disability beginning on May 1, 2017, due to fibromyalgia, depression, anxiety, migraines, and body pains. [R. 91]. Ms. Gutierrez was 48 years old on her alleged onset date, which is defined as a young individual age (18-49), and subsequently changed age category to closely approaching advanced age (50-54). *Id*. She has a bachelor's degree in education and work experience as an administrative clerk, administrative assistant, tutor, counselor, survey worker, and nursery school attendant. [R. 22].

### B.   Ms. Gutierrez's Testimony Regarding Her Disabilities

At the hearing before the ALJ, Ms. Gutierrez testified that her symptoms of fibromyalgia started around the age of 30. [R. 56]. Her level of pain fluctuates, but can go up to ten out of ten "all over" her body, with the main points of pain located at the neck, shoulders, back, wrists, hips, behind the knees, and ankles. [R. 57]. On average, she categorized the pain in her left shoulder at about eight out of ten, and the pain in her right shoulder as a "seven or six." [R. 58]. She also testified that the pain in her back "can go as high as ten or it can be an eight or seven." [R. 59]. Similarly, her wrist pain can go "as far as like a ten," and she could only lift less than ten pounds with either hand. [R. 59, 68]. As an example of how the left side of her body tends to hurt more than the right, Ms. Gutierrez testified that she could hold her cell phone with her right hand but not with her left due to the pain. [R. 59].

According to Ms. Gutierrez, a typical day starts with breakfast, after which she lies down "for a while" because she does not sleep well through the night. [R. 61]. Throughout the day, she prays a lot, tries to read the Bible, tries to do some journal writing, and tries to

do some light stretching to help with the pain. [R. 62]. She testified that, for lunch, she may warm something up in the microwave because she cannot stand for long periods of time. [R. 62]. Afterwards, she returns to her room to lie down and rest. *Id.* During the course of an eight-hour day, according to Ms. Gutierrez, her naps will typically last a couple of hours, and she lays down for five to six hours. [R. 62, 68]. She explained that at times, she cannot shower daily because it is too exhausting. [R. 63]. Prior to the pandemic, she would try to go to mass once a week, and once or twice a month, she would go out for coffee with friends after mass. [R. 64].

### C. Expert Opinions Regarding Ms. Gutierrez

The record contains treatment notes from numerous doctors, social workers, and other professionals regarding Ms. Gutierrez's conditions. Treatment notes from one of Ms. Gutierrez's treating physicians, Barbara M. Muina, M.D., from July 2018 to December 2018, indicate that Ms. Gutierrez was diagnosed with fibromyalgia, chronic fatigue, and major depressive disorder. [R. 377]. Upon physical examinations, Ms. Gutierrez was able to ambulate without assistance and was able to sit comfortably on the examination table without difficulty or evidence of pain. [R. 377, 400, 436]. According to Dr. Muina, Ms. Gutierrez also reported that she enjoyed walking and was able to bathe, dress, feed herself, cook, live independently, and drive short distances during that period. [R. 384, 404, 436].

Ms. Gutierrez also saw Natalie Gardiner, M.D., between September 2018 and December 2018 for her fibromyalgia and was treated with acupuncture sessions. [R. 471]. According to Dr. Gardiner, physical examinations performed during that period document Ms. Gutierrez's multiple trigger points, but normal ranges of motion, normal strength, and intact sensation. *Id.* Dr. Gardiner's treatment notes for the period between January 2019 to

December 2019 indicate that Ms. Gutierrez reported symptoms of pain in all four quadrants of the body and pain upon palpitation in her extremities, sacroiliac joints, hips, and back. [R. 469, 470, 480, 554]. However, she also had intact gait and station and intact sensation. [R. 469, 470, 480, 554].

Dr. Gardiner opined on March 12, 2019, that Ms. Gutierrez can rarely lift and carry less than 10 pounds, can stand or walk for only 2 hours out of an 8-hour workday, cannot work 8 hours a day, and would likely be absent from work for more than 4 days per month due to her impairments. [R. 500-03]. Dr. Gardiner expressed similar opinions on March 26, 2020. [R. 619-23].

In several letters ranging from December 20, 2018, to January 16, 2020, Michael Tuch, LCSW, wrote that Ms. Gutierrez had difficulty doing simple tasks and was able to do only 1 or 2 tasks daily. [R. 533-38, 558-59]. Mr. Tuch described Ms. Gutierrez as completely bedridden at times, including from December 23, 2019, to January 4, 2020, due to pain, chronic fatigue, and severe depression/anxiety. [R. 533, 561].

Ms. Gutierrez was also examined by State Agency psychologists. Nicole Mannis, Psy.D., a State Agency psychologist, assessed that Ms. Gutierrez's mental impairments are not severe and caused only mild limitations in mental functions. [R. 78-101]. Another State Agency psychologist, Leif Davis, Psy.D., opined that Ms. Gutierrez has moderate limitations but can understand and follow simple instructions, make basic work-related decisions, and perform simple tasks in settings with limited social demands. [R. 106-43].

At the hearing before the ALJ, a vocational expert testified that a person with Ms. Gutierrez's same age, education, work experience, and residual functional capacity ("RFC") cannot perform any of her past work. [R. 22]. When asked by the ALJ whether jobs existed

in the national economy for a person with Ms. Gutierrez's age, education, work experience and RFC, the vocational expert provided three representative occupations such a person could perform: assembler production, inspector/hand packager, and marker. [R. 23].

## II.   PROCEDURAL HISTORY

Ms. Gutierrez applied for SSDI and SSI benefits on November 30, 2018. [R. 239-40][1]. Her applications were denied - initially on February 18, 2019, and on reconsideration on June 25, 2019. [R. 148-53, 159-70]. Ms. Gutierrez then requested a hearing, which was held before an ALJ on May 5, 2020. [R. 171, 36]. On May 21, 2020, the ALJ issued a decision finding that Ms. Gutierrez was not disabled under sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act. [R. 24]. Ms. Gutierrez then requested review of the ALJ's decision. [R. 1.]. On November 2, 2020, the Appeals Council denied her request for review, rendering the ALJ's decision as the Social Security Commissioner's "final" determination. *Id*. *See* 42 U.S.C. 405(g); *Chester v. Rowen*, 792 F.2d 129, 131 (11th Cir. 1986).

Ms. Gutierrez now seeks review of the ALJ's decision. Having exhausted her administrative remedies, Ms. Gutierrez filed the Complaint in this action on December 30, 2020 [ECF No. 1]. *See* 42 U.S.C. § 405(g). Thereafter, Ms. Gutierrez filed her Motion for Summary Judgment on November 17, 2021 [ECF No. 16], and Defendant filed a Cross Motion for Summary Judgment and Response to Ms. Gutierrez's Motion on January 18, 2022 [ECF No. 20], after the Court granted an extension of time to file [ECF No. 18]. Ms. Gutierrez filed her Reply in support of her Motion on February 17, 2022. [ECF No. 22].

---

[1] All references to "[R. __]" are to the Social Security Record, the pertinent portions of which are found at ECF No. 9. The record page numbers listed on this document refer to the bold numbers found in the lower right-hand corner of each page of the record, as opposed to those page numbers assigned by the court's electronic docking system.

5

### III.   THE ALJ'S DECISION

The ALJ concluded that Ms. Gutierrez is not disabled under Sections 216(i) and 233(d) of the Social Security Act based on the five-step process that must be used for evaluating whether a claimant is disabled.  20 C.F.R §§ 404.1520, 416.920[2]; *see Frame v. Comm'r, Soc. Sec. Admin.*, 596 F. App'x 908 (11th Cir. 2015).

At step one of this process, the ALJ must determine whether the claimant is engaging in substantial gainful activity ("SGA"). *Id*. SGA is defined as work activity that is both substantial and gainful. 20 C.F.R. §§ 404.1572, 416.972. Generally, if a claimant's labor earnings are above a specific level set out in the regulations, it is presumed that she has demonstrated the ability to engage in SGA. 20 C.F.R §§ 404.1574-75, 416.974-5. If a claimant is able to engage in SGA, the ALJ will find that she is not disabled. 20 C.F.R. §§ 404.1571, 416.971.

At step two, the ALJ must determine whether the claimant has either a medically determinable impairment ("MDI") or a combination of impairments that is severe. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is severe if it significantly limits an individual's ability to perform basic work activities. *Id*. If the claimant does not have an MDI or combination of impairments that is severe, she is not considered disabled.

At step three, the ALJ must determine whether the claimant's impairment or combination of impairments is of a severity that meets or medically equals the criteria of an

---

[2] Throughout this section, the undersigned will cite to the appropriate rules for SSDI and SSI benefits and notes that the rules governing both are essentially identical.

impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1525-26; *see also* §§ 416.920(d), 416.925-26. If so, the claimant is disabled. *Id*. If not, the analysis proceeds to the next step. *Id*. Before considering step four, however, the ALJ must first determine the claimant's Residual Functional Capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). A claimant's RFC is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. 20 C.F.R. §§ 404.1545, 416.945. The ALJ must make this determination while stating "with particularity the weight given to different medical opinions and the reasons therefor." *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1321 (11th Cir. 2021) (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011)).

At step four, the ALJ must determine whether the claimant has the RFC to perform her past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). Past relevant work means work performed (either in the manner claimant actually performed it or as it is generally performed in the national economy) within 15 years prior to the date claimant's disability must be established. 20 C.F.R. §§ 404.1560, 416.960. If the claimant has the RFC to do her past relevant work, she is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is unable to do any past relevant work, the analysis proceeds to the final step.

At the fifth and final step, the ALJ must determine whether the claimant is able to do any other work considering her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g). If the claimant can do other work, she is not disabled. *Id*. If she is unable to do other work, she is disabled. *Id*. At step five, the burden temporarily shifts to the Social Security Administration ("SSA") to show the existence of other jobs in the national economy that exist in significant numbers that the claimant can perform, given her

impairments. 20 C.F.R. 404.1512, 404.1560(c), 416.912, and 416.960(c). The ALJ makes this determination by considering both the Dictionary of Occupational Titles ("DOT") and testimony from a vocational expert. *See Buckwalter*, 5 F.4th at 1321.

Regarding Ms. Gutierrez's claim for benefits, the ALJ found that: (1) Ms. Gutierrez had not engaged in SGA since the alleged onset date; and (2) her "fibromyalgia; migraine; depressive disorder; and anxiety disorder" were severe impairments; however, (3) her combination of impairments, did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404. Further, the ALJ found that Ms. Gutierrez had the RFC to perform "light work" as defined in 20 C.F.R. 404.1567(b) and 416.967(b), except that she could only stand or walk for a total of 4 hours during an 8-hour day. [R. 14-20]. As such, (4) Ms. Gutierrez was unable to perform any past relevant work; but (5) she could perform a significant number of jobs in the national economy. [R. 20-24]. Therefore, the ALJ determined that Ms. Gutierrez was not disabled under sections 216(i), 223(d), or 1614(a)3(A) of the Social Security Act. [R. 24].

## IV.   LEGAL STANDARD[3]

Judicial review of the ALJ's decision is limited to determining whether the decision is supported by substantial evidence and whether the correct legal standards were applied. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997). Substantial evidence is more than a scintilla, but is less than a preponderance. *Id*. (citations omitted); *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). It is such relevant evidence that a reasonable person would accept as adequate to

---

[3] The standard of review in Supplemental Security Income ("SSI") cases is the same as the standard for Social Security Disability Insurance ("SSDI") cases. 42 U.S.C. § 1383(c)(3). Consequently, the case law addressing SSDI is generally applicable to SSI cases.

support a conclusion. *Buckwalter*, 5 F.4th at 1320. A court must defer to the ALJ's decision if it is supported by substantial evidence, even if the preponderance of the evidence weighs against it. *Id*. A court may not redecide facts, reweigh the evidence, or substitute its judgment for that of the ALJ. *Id*. Although factual findings enjoy such deference, the ALJ's legal analysis and conclusions are reviewed *de novo*. *Ingram v. Comm'r*, 496 F.3d 1253, 1260 (11th Cir. 2007).

## V.  ANALYSIS

Ms. Gutierrez contends that the ALJ's decision should be reversed for the following reasons:[4] (1) The ALJ erred as a matter of law in failing to properly evaluate Ms. Gutierrez's allegations of disabling pain resulting from fibromyalgia; (2) the ALJ erred as a matter of law in discrediting the treating source opinion of Dr. Gardiner; and (3) the appointment of Andrew Saul as a single commissioner of the SSA violates the separation of powers and renders the decision in this case constitutionally defective. *See* [ECF No. 16]. The Court discusses each of Ms. Gutierrez's claims in turn below.

### a.  The ALJ's Evaluation of Ms. Gutierrez's Fibromyalgia

Ms. Gutierrez maintains that the ALJ committed reversible error in his analysis of subjective complaints relative to her limitations from fibromyalgia. [ECF No. 16 at 10[5]]. Specifically, Ms. Gutierrez maintains that the ALJ did not follow the proper protocol for analyzing Ms. Gutierrez's statements concerning the intensity, persistence, and limiting

---

[4] For the sake of clarity and uniformity, the undersigned replaces references in the parties' motions to the Commissioner with the ALJ where appropriate because the ALJ's decision is the Commissioner's final determination. *See* [R. 1].

[5] The undersigned acknowledges a scrivener's error on Ms. Gutierrez's Motion in that the page numbers in the Motion start at 0. This Report refers to the correct page numbers based on a first page of 1.

effects of her fibromyalgia and that he selectively cited to evidence that supported his decision while ignoring evidence that supported her claim. *Id.* at 10-11. According to Ms. Gutierrez, it was improper for the ALJ to even evaluate whether her fibromyalgia was entirely consistent with the medical evidence in the record because of the unique nature of fibromyalgia. *Id.*

Fibromyalgia is a unique impairment that "often lacks medical or laboratory signs, and is generally diagnosed mostly on a[n] individual's described symptoms." *Horowitz v. Comm'r of Soc. Sec.*, 688 F. App'x 855, 863 (11th Cir. 2017) (quoting *Moore*, 405 F.3d at 1211 (11th Cir. 2005)). The SSA has acknowledged the unique issues that arise when a claimant suffers from fibromyalgia and published SSR 12-2p to provide guidance on how it evaluates fibromyalgia for disability claims. As set forth therein:

> [I]f objective medical evidence does not substantiate a claimant's statements about the intensity, persistence, and functionally limiting effects of symptoms, we consider all of the evidence in the case record, including the person's daily activities, medications or other treatments the person uses, or has used, to alleviate symptoms; the nature and frequency of the person's attempts to obtain medical treatment for symptoms; and statements by other people about the person's symptoms. As we explain in SSR 96-7p [superseded by SSR 16-3p], we will make a finding about the credibility of the person's statements regarding the effects of his or her symptoms on functioning.

SSR 12-2p, 77 Fed. Reg. 43640, 43643 (July 25,2012); *see also Horowitz*, 688 F. App'x at 864.

After careful consideration of the entire record, the ALJ found that Ms. Gutierrez had the RFC to perform "light work" as defined in the regulations, except that she can stand for 4 hours and sit four 6 hours in an 8-hour workday. *Id.* at 14. In his determination of Ms. Gutierrez's RFC, the ALJ acknowledged statements made by Ms. Gutierrez regarding her pain, its intensity and persistence, and her functional limitations, such as how she cannot hold her cellphone in her left hand and can only lift less than 10 pounds. [R. 15]. He then found that Ms. Gutierrez's statements about the intensity, persistence and limiting effects of her

symptoms were inconsistent with physical examinations by Dr. Gardiner that documented Ms. Gutierrez's intact gait and station and normal strength, ranges of motion, and sensation. [R. 18]. He found further support for this determination in the physical examinations by Dr. Muina, objective examinations of mental abilities by Dr Gardiner, and the opinions of the State Agency physicians and psychologists. [R. 21].

Having found that the objective medical evidence did not substantiate or support Ms. Gutierrez's statements about her symptoms, the ALJ properly evaluated Ms. Gutierrez's fibromyalgia pursuant to SSA guidelines by considering all the evidence in the record. [R. 15]. In his decision, the ALJ made explicit references to aspects of Ms. Gutierrez's daily activities, including statements made by Ms. Gutierrez that she goes to church once or twice a month. *Id*. The ALJ also noted that, in late 2018, Ms. Gutierrez reported to Dr. Muina that she enjoyed walking and was able to cook, live independently, and drive short distances. [R. 15].

The ALJ acknowledged the opinions of Dr. Gardiner, who opined, *inter alia*, that Ms. Gutierrez could sit for 2 hours and stand/walk for 2 hours out of an 8-hour workday and would not be able to work 8 hours a day. [R. 18]. Dr. Gardiner further opined that Ms. Gutierrez's pain and other symptoms would constantly interfere with her ability to perform simple tasks and would likely lead to Ms. Gutierrez being absent from work for more than 4 days per month. *Id*. However, the ALJ found Dr. Gardiner's opinions were not persuasive because they were not consistent with or supported by the contemporaneous physical exams she conducted, which documented, *inter alia*, Ms. Gutierrez's intact gait and station, and normal strength, ranges of motion, and sensation. *Id*. at 19. The ALJ also found that these opinions from Dr. Gardiner were inconsistent with Dr. Muina's physical examination of Ms.

Gutierrez documenting her abilities to ambulate without assistance and sit comfortably without difficulty or evidence of pain. *Id.*

Additionally, the ALJ referenced letters from Michael Tuch, LCSW, regarding Ms. Gutierrez's difficulty completing simple tasks and her inability to complete more than 1 or 2 tasks daily. [R. 17, 19]. Later notes from Mr. Tuch describe Ms. Gutierrez as completely bedridden at times, including from December 23, 2019, to January 4, 2020, due to pain, chronic fatigue, and severe depression/anxiety. [R. 17, 19-20]. The ALJ found the opinions of Mr. Tuch were not persuasive, however, because they were not supported by contemporaneous treatment notes and were inconsistent with the objective physical examinations by Dr. Gardiner. [R. 20].

While an ALJ is not required to "mechanically recite the evidence leading to [his] determination," *Hutchison v. Bowen*, 787 F.2d 1461, 1463 (11th Cir. 1986), it is clear from a review of the ALJ's decision and the record as a whole that the ALJ considered all the evidence available, including that Ms. Gutierrez has "bad days and good days." *See* SSR 12-2p, 77 Fed. Reg. at 43644 ("For a person with [fibromyalgia], we will consider a longitudinal record whenever possible because the symptoms of [fibromyalgia] can wax and wane so that a person may have 'bad days and good days.'") It is not within the scope of this Court's review to reweigh the evidence nor is it this Court's place to substitute its judgment for that of the ALJ by making a finding about the credibility of Ms. Gutierrez's statements. *Buckwalter*, 5 F.4th at 1320.

Based on a review of the record, this Court finds that substantial evidence supports the ALJ's determination regarding the intensity, persistence, and functionally limiting effects of Ms. Gutierrez's symptoms. *See Horowitz*, 688 F. App'x at 864 (finding substantial evidence to

12

support ALJ's credibility determination where claimant's testimony was inconsistent with her physical examinations).

Ms. Gutierrez also asserts the additional argument that the ALJ erred as a matter of law by failing to clearly indicate whether he considered SSR 12-2p(II)(A) and Ms. Gutierrez's disability reports, pain questionnaires, and function report. [ECF No. 16 at 13-15]. SSR 12-2p(II)(A)(1) and (2) provide criteria to assist in determining whether a claimant has an MDI of fibromyalgia. Specifically, the ALJ may find that a person has an MDI of fibromyalgia if she has a history of widespread pain ("pain in all four quadrants . . . and axial skeletal pain") that has persisted for 3 months and, upon physical examination, has at least 11 positive tender points.

As mentioned above, "it is not required that the [ALJ] mechanically recite the evidence leading to [his] determination," nor is an ALJ required to reference SSR12-2p in his decision. *See Hutchison*, 787 F.2d at 1463; s*ee also Steele v. Soc. Sec. Admin., Comm'r*, No. 5:14-CV-01038-SGC, 2015 WL 5517283, at *4 (N.D. Ala. Sept. 18, 2015) (holding that ALJ was not required to reference SSR 12-2p when reviewing claimant's fibromyalgia). Even so, here the ALJ's decision reflects that he complied with SSR 12-2p. Pursuant to SSR 12-2p(II)(A), the ALJ considered Ms. Gutierrez's reported symptoms of pain in all four quadrants of the body. [R. 16]. The ALJ also noted physical examinations from September to December 2018 that document Ms. Gutierrez's trigger points. [R. 15]. And, most importantly, the ALJ *did* find that Ms. Gutierrez's fibromyalgia was a severe MDI. *See* [R. 13] ("The claimant has the following severe impairments: fibromyalgia; migraine; depressive disorder; and anxiety disorder.") Thus, the undersigned finds Ms. Gutierrez's argument regarding the lack of evidence that the ALJ considered SSR 12-2p unavailing. Moreover, Ms. Gutierrez cites no

support for her claim that the ALJ must explicitly refer to the disability reports, pain questionnaires, or function report.

The undersigned also finds the cases cited by Ms. Gutierrez in support of her argument that that the ALJ must "scrupulously and conscientiously probe into, inquire of, and explore all relevant facts" unpersuasive. Ms. Gutierrez cites *Henry v. Commissioner of Social Security*, 802 F.3d 1264, 1267 (11th Cir. 2015), and *Cowart v. Schweiker*, 662 F.2d 662, 735 (11th Cir. 1981), for the proposition that the ALJ must "scrupulously and conscientiously probe into, inquire of, and explore all relevant facts." Such a "special duty," however, only arises from the ALJ's "basic obligation to develop a full and fair record" when the claimant is not represented by counsel. *Cowart*, 662 F.2d at 735. Such a duty does not arise here because Ms. Gutierrez is represented by counsel and was during the proceedings before the ALJ.

*Marbury v.* Sullivan, 957 F.2d 837, 840 (11th Cir. 1992), also presents different circumstances from those in this case. In *Marbury*, the 11th Circuit found that the ALJ did not correctly consider the claimant's complaints of pain, despite the strong medical evidence supporting claimant's symptoms, including hospitalization, radiology reports, and a diagnosis of "long-standing history of peptic ulcer disease with multiple ulcerations." Unlike the *Marbury* case, the record reflects that the ALJ properly relied on the objective medical evidence in the record in making his determinations in this case. [R. 14-21].

Other cases cited by Ms. Gutierrez are also unpersuasive. Unlike the findings in *Janeda v. Commissioner of Social Security*, the ALJ here did find Ms. Gutierrez's fibromyalgia is an MDI. No. 2:16-CV-803-FTM-MRM, 2018 WL 1282313, at *3 (M.D. Fla. Mar. 13, 2018). And, the *Morgan v. Commissioner of Social Security*, No. 8:14-CV-305-T-DNF, 2015 WL 1311062, at *4 (M.D. Fla. Mar. 24, 2015), and *Schink v. Commissioner of Social Security*, 935

F.3d 1245, 1259 (11th Cir. 2019), cases dealt with the Treating Physician Rule, which has since been repealed. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844-01, 5869, 5880 (January 18, 2017).

In sum, the undersigned finds that Ms. Gutierrez's arguments regarding the ALJ's analysis of her fibromyalgia lack merit. Rather, the ALJ followed the proper procedures in analyzing Ms. Gutierrez's fibromyalgia, and substantial evidence supports the ALJ's determinations.

### b.  The ALJ's Considerations of Dr. Gardiner's Opinions

Ms. Gutierrez also argues that the ALJ erred as a matter of law by failing to adequately explain the basis for rejecting the opinions of Dr. Gardiner. [ECF No. 16 at 17]. According to the SSA regulations, the ALJ should not defer or give controlling weight to any medical opinions. 20 C.F.R. § 404.1520. Instead, the ALJ shall consider the persuasiveness of any medical opinion based on five factors: Supportability; (2) Consistency; (3) Relationship with the claimant; (4) Specialization; and (5) other factors. 20 C.F.R. § 404.1520(c). The first two factors, supportability and consistency, are the most important in the analysis. 20 C.F.R. § 404.1520(b)(2)-(c). As such, the ALJ must explain how he considered these two factors when determining the persuasiveness of a medical source's medical opinion. *Id*. The ALJ may, but is not required to, also explain how he considered the remaining factors. *Id*. Further, the ALJ shall articulate how he considered medical opinions from the same source together and is not required to articulate how he considered each opinion or finding separately. 20 C.F.R. § 404.1520(b)(1).

Here, the ALJ referenced two opinions from Dr. Gardiner dated March 2019 and March 2020. [R. 18—19]. In those opinions, Dr. Gardiner opined, *inter alia*, that Ms.

Gutierrez could sit for 2 hours and stand/walk for 2 hours out of an 8-hour workday, and that Ms. Gutierrez is not able to work 8 hours a day. Dr. Gardiner further opined that Ms. Gutierrez's pain and other symptoms would constantly interfere with her ability to perform simple tasks and would likely lead to her being absent from work for more than 4 days per month. [R. 18-19].

As discussed above, the ALJ found Dr. Gardiner's opinions were not persuasive because they were inconsistent with and not supported by the record evidence as a whole. [R. 19]. Specifically, the ALJ found Dr. Gardiner's opinions were inconsistent with physical examinations conducted by Dr. Gardiner and by Dr. Muina between July 2018 and November 2019 that documented Ms. Gutierrez's intact gait and station; normal strength, ranges of motion, and sensation; ability to ambulate without assistance, and ability to sit comfortably on the examination table without difficulty or evidence of pain. *Id*.

Ms. Gutierrez focuses on how the exams cited by the ALJ to support his determination that Dr. Gardiner's opinion were not persuasive also support a finding of a severe MDI of fibromyalgia, pursuant to SSR 12-2p. [ECF No. 16 at 15-16]. As discussed above, the ALJ did find that Ms. Gutierrez had a severe MDI of fibromyalgia, but the fact that she was diagnosed with fibromyalgia does not establish that fibromyalgia caused disabling limitations for purposes of the SSA or that she was more limited than determined by the ALJ. *See Moore*, 405 F.3d at 1213 n.6 (11th Cir. 2005); *see also Laurey v. Comm'r of Soc. Sec.*, 632 F. App'x 978, 988 n. 5 (11th Cir. 2015). Moreover, it is outside the scope of this Court's review to redecide facts, reweigh the evidence, or substitute its judgment for that of the ALJ. *Buckwalter*, 5 F.4th at 1320.

Thus, based on the record and applicable authorities, the undersigned finds that the ALJ did not err as a matter of law by finding that Dr. Gardiner's opinions were not persuasive. The ALJ properly articulated how he considered the persuasiveness of Dr. Gardiner's medical opinions, and the substantial evidence supports his findings and conclusions.

### c. Whether the ALJ's Decision is Constitutionally Defective

Finally, Ms. Gutierrez argues that the decision on her claim was made by a Commissioner, through authority delegated to the ALJ, whose appointment was unconstitutional. [ECF 16 at 19]. In support, Ms. Gutierrez relies on *Seila Law LLC v. Consumer Financial Protection Bureau*, 140 S. Ct. 2183 (2020), in which the Supreme Court held that it is unconstitutional for an executive agency to be led by a single head who serves for a longer term than the President and can only be removed for cause.

The parties agree that the Social Security Act limits the President's authority to remove the Commissioner of Social Security without good cause. [ECF No. 20]; s*ee also* 42 U.S.C. §902(a)(3). But as the Supreme Court more recently explained in *Collins v. Yellen*, the holding in *Seila Law* should not be misunderstood as giving a party entitlement to relief solely based on an unconstitutional removal restriction. 141 S. Ct. 1761, 1788 n.24 (2021) ("[T]hat holding [in *Seila Law*] does not mean that actions taken by such an officer are void *ab initio* and must be undone.") As the Court explained, absent a constitutional defect in the method of appointment, actions by an agency official are not void based on the existence of an unconstitutional removal restriction. *Id*. at 1787. Rather, a plaintiff seeking relief on this basis must show that the unconstitutional restriction actually caused her harm. *Id*. at 1788-89.

The undersigned finds that Ms. Gutierrez does not allege any facts that plausibly show she was actually harmed by the Social Security Act's statutory tenure protection, nor does she

17

show that the removal restriction affected the ALJ's decision regarding her claims. Moreover, Ms. Gutierrez does not allege a constitutional defect in the method of the ALJ's appointment. Thus, even assuming *arguendo* that the removal provision is unconstitutional, reversal or remand of Ms. Gutierrez's claim is not warranted because Ms. Gutierrez has not established how the allegedly unconstitutional provision directly harmed her or had any effect on the proceedings[6].

## VI.  CONCLUSION

For the reasons set forth above, the undersigned finds that the ALJ's decision denying Ms. Gutierrez's claims for SSI and SSDI are supported by substantial record evidence and that the ALJ applied the correct legal standards. Therefore, Ms. Gutierrez's claims of errors and of unconstitutionality should be denied.

## VII.  RECOMMENDATION

In accordance with the foregoing, it is

RESPECTFULLY RECOMMENDED that the decision of the Commissioner be **AFFIRMED**, that Ms. Gutierrez's Motion for Summary Judgment [ECF No. 16] be **DENIED**, and that Defendant's Cross-Motion for Summary Judgment [ECF No. 20] be **GRANTED**.

The parties have fourteen days from the date of receipt of the Report and Recommendation within which to serve and file written objections, if any, with United States District Judge Williams. Failure to file objections shall bar the parties from attacking on

---

[6] District Courts across the country, including the Middle District of Florida, have reached this same conclusion since the decision in *Collins*. *See, e.g. Vickery v. Comm'r of Soc. Sec.*, No. 5:21-CV-122-PRL, 2022 WL 252464, at *4 (M.D. Fla. Jan. 27, 2022); *Boger v. Kijakazi*, No. 1:20-CV-00331-KDB, 2021 WL 5023141, at *3 (W.D.N.C. Oct. 28, 2021); *Jayne C. v. Comm'r of Soc. Sec.*, No. 3:20-CV-06188-TLF, 2022 WL 248149, at *5-8 (W.D. Wash. Jan. 27, 2022).

appeal the unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice. *See* 28 U.S.C. § 636(b)(1); *Harrigan v. Metro Dade Police Dep't Station* #4, 977 F.3d 1185, 1191-1192 (11th Cir. 2020); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

**RESPECTFULLY SUBMITTED** in Chambers at Miami Florida, this 2nd day of March 2022.

_____
MELISSA DAMIAN
UNITED STATES MAGISTRATE JUDGE